KURT S. ODENWALD, Judge
Introduction
Melissa V. Bennett and Koach Baruch Frazier (collectively "Appellants") appeal from the trial court's dismissal of their complaint, which alleged that St. Louis County Ordinance Section 701.110 (the "Ordinance")[1] was unconstitutionally vague and overbroad. The Ordinance makes it unlawful to in any manner interfere or obstruct a police officer or other County employee in the performance of his or her official duties.
Appellants raise three points on appeal, each of which implicates the protections of freedom of speech guaranteed under the United States and Missouri Constitutions. Point One challenges the constitutionality of the Ordinance as proscribing a substantial amount of constitutionally protected speech. Point Two contends that the Ordinance is unconstitutionally vague because it contains multiple undefined terms and phrases, and permits arbitrary and discriminatory enforcement. In Point Three, Appellants claim that the Ordinance is overbroad because its unclear language outlaws a substantial amount of constitutionally protected First Amendment speech. We conclude that the Ordinance is neither unconstitutionally overbroad nor unconstitutionally vague under both the *396 First Amendment to the United States Constitution and Article I of the Missouri Constitution. Accordingly, we affirm the judgment of the trial court.
Factual and Procedural History
St. Louis County police officers arrested Appellants for violating the Ordinance while they were participating in an anti-police-brutality protest outside the Ferguson Municipal Police Department. The Ordinance makes it "unlawful for any person to interfere in any manner with a police officer or other employee of the County in the performance of his official duties or to obstruct him in any manner whatsoever while performing any duty."
St. Louis County charged Appellants with violating the Ordinance. Consequently, Appellants filed a complaint with the trial court alleging that the Ordinance was unconstitutionally vague and overbroad on its face, and later moved for a judgment on the pleadings. Appellants argued that the Ordinance was unduly vague in several respects. First, Appellants maintained the Ordinance used the terms "obstruct," "interfere," and "in any manner" to prohibit unlawful conduct toward a police officer without defining those terms, and without restricting those terms to physical conduct or limiting the Ordinance's application to a particular time or place. Appellants also challenged the Ordinance for lacking a scienter requirement. Further, Appellants reasoned that the Ordinance was substantially overbroad in its use of the terms "obstruct," "interfere," and "in any manner," which effectively proscribed a substantial amount of protected free speech activity, including comments that may annoy, interrupt, or protest a police officer's activities. The trial court granted judgment in favor of St. Louis County, holding that the Ordinance is not facially unconstitutional. Appellants now appeal.
Points on Appeal
Appellants raise three points on appeal. In Point One, Appellants argue that the plain meaning of the Ordinance encompasses conduct protected by the First Amendment of the United States Constitution.[2] In Point Two, Appellants contend that the Ordinance is unconstitutionally vague because it fails to provide fair notice of its application and encourages arbitrary and discriminatory enforcement. In Point Three, Appellants claim that the Ordinance is overbroad and in violation of the First Amendment and Article I, Section 8 of the Missouri Constitution,[3] because it outlaws vast amounts of protected speech.
Jurisdiction
Appellants challenge the constitutionality of a municipal ordinance. Although not raised by the parties, we have a duty to examine our jurisdiction sua sponte. Walker v. Brownel, 375 S.W.3d 259, 261 (Mo. App. E.D. 2012). If we lack jurisdiction to entertain the appeal, we must dismiss. Id.
The Missouri Supreme Court has exclusive appellate jurisdiction in cases involving the validity of a state statute or a provision of the constitution of this state. MO. CONST. ART. V, § 3. However, the Supreme Court has determined that "[c]laims that municipal ordinances are constitutionally invalid are not within the exclusive appellate jurisdiction of this Court." Alumax Foils, Inc. v. City of St. Louis, 939 S.W.2d 907, 912 (Mo. banc 1997). "Under our constitutional scheme, [ ] the court of appeals has the jurisdiction initially to consider such issues on appeal." Id. Thus, we *397 have jurisdiction over the validity and constitutionality of the Ordinance. See Damon v. City of Kansas City, 419 S.W.3d 162, 174-75 (Mo. App. W.D. 2013).
Standard of Review
We review the constitutionality of ordinances de novo. City of Sullivan v. Sites, 329 S.W.3d 691, 693 (Mo. banc 2010) ; St. Louis Ass'n of Realtors v. City of Ferguson, 499 S.W.3d 395, 398 (Mo. App. E.D. 2016). Ordinances are presumed valid and lawful. Coop. Home Care, Inc. v. City of St. Louis, 514 S.W.3d 571, 578 (Mo. banc 2017). Further, "[t]he party challenging the validity of the ordinance carries the burden of proving the municipality exceeded its constitutional or statutory authority." Id.
Discussion
Appellants dispute the constitutionality of the Ordinance. The Ordinance states as follows:
It is unlawful for any person to interfere in any manner with a police officer or other employee of the County in the performance of his official duties or to obstruct him in any manner whatsoever while performing any duty.
Importantly, Appellants contend that the Ordinance is facially unconstitutional as written, and do not seek constitutional review under an "as applied" standard. The distinction between a facial challenge and an as-applied challenge lies both in the remedy the parties seek and the analysis of the court. A facial challenge to the constitutionality of an ordinance is more challenging than an as-applied challenge. See, e.g., Bruni v. City of Pittsburgh, 824 F.3d 353, 362-63 (3d Cir. 2016) ; United States v. Bramer, 832 F.3d 908, 909-10 (8th Cir. 2016). The court must evaluate the ordinance generally, instead of specifically to plaintiff's particular set of circumstances. An as-applied challenge, conversely, would require Appellants to argue that the Ordinance was unconstitutionally applied to their individual circumstances. See, e.g., Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 462-63, 462 n.20, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). "A successful as-applied challenge bars a law's enforcement against a particular plaintiff, whereas a successful facial challenge results in 'complete invalidation of a law.' " Bruni, 824 F.3d at 362 (quoting CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 624 (3d Cir. 2013) ). Appellants chose to make a facial challenge and not an as-applied challenge. Thus, we only review the facial constitutionality challenges to the Ordinance and need not discuss the specific facts of Appellants' arrests.
I. Points One and Three: Overbreadth
In Point One, Appellants argue that the plain meaning of the Ordinance encompasses a substantial amount of constitutionally protected speech. Further, in Point Three, Appellants similarly contend that the plain meaning of the Ordinance, as written, prohibits a substantial amount of constitutionally protected content, and is therefore unconstitutionally overbroad. Because Appellant's Points One and Three both address overbreadth, we combine these points in our discussion below.
A. The Overbreadth Doctrine Standard
The overbreadth doctrine, born in First Amendment jurisprudence of the United States Supreme Court, New York v. Ferber, 458 U.S. 747, 768, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), recognizes that "it is better to invalidate laws that potentially could be construed to punish protected speech, even if those laws might be constitutionally applied, rather than to let such a law stand and chill protected *398 speech." State v. Jeffrey, 400 S.W.3d 303, 308 (Mo. banc 2013). The overbreadth doctrine is limited to the First Amendment context. Id. When conduct is at issue, "the overbreadth doctrine has a[n even] more limited application." Id. at 311 (internal citations omitted).
It is well recognized that courts will not invalidate an ordinance on its face "merely because it is possible to conceive of a single impermissible application." City of Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 630, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (Brennan, J., dissenting)). Instead, "in a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Ordinances "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." Hill, 482 U.S. at 459, 107 S.Ct. 2502 (citing Kolender v. Lawson, 461 U.S. 352, 359 n.8, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ). However, "[i]f the [ordinance] may fairly be construed in a manner which limits its application to a 'core' of constitutionally unprotected expression, it may be upheld against the charge that it is overly broad." State v. Carpenter, 736 S.W.2d 406, 408 (Mo. banc 1987) (Blackmar, J., dissenting) (cited with approval in State v. Moore, 90 S.W.3d 64, 67 (Mo. banc 2002) ). "The mere possibility of erroneous application of the statute does not amount 'to the irreparable injury necessary to justify a disruption of orderly state proceedings.' " Cameron v. Johnson, 390 U.S. 611, 621, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (quoting Dombrowski v. Pfister, 380 U.S. 479, 485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) ).
B. Overbreadth Analysis of Similar Laws
1. United States Supreme Court Precedent: Cameron and Hill
Appellants and Respondents primarily rely on two United States Supreme Court cases to frame the issue regarding the facial constitutionality of the Ordinance. Although the laws discussed in Cameron and Hill are distinguishable, the analysis of both provide a cohesive framework-when coupled with the subsequent court cases-for evaluating the constitutionality of the Ordinance.
In 1968, the United States Supreme Court reviewed the constitutionality of a Mississippi anti-picketing law. Cameron, 390 U.S. at 612, 88 S.Ct. 1335. The statute provided, in pertinent part:
It shall be unlawful for any person, singly or in concert with others, to engage in picketing or mass demonstrations in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any public premises, State property, county or municipal courthouses, ... or other public buildings or property owned by the State of Mississippi, ... or so as to obstruct or unreasonably interfere with free use of public streets, sidewalks, or other public ways adjacent or contiguous thereto.
Id. at 612 n.1, 88 S.Ct. 1335.
The Supreme Court held that the Anti-Picketing Law was not unconstitutionally overbroad because the statute did not outlaw a substantial amount of protected, First Amendment freedoms. Id. at 617, 88 S.Ct. 1335. The Cameron court stated, "[a]ny chilling effect on the picketing as a form of protest and expression that flows *399 from good-faith enforcement of this valid statute would not, of course, constitute that enforcement an impermissible invasion of protected freedoms." Id. at 619, 88 S.Ct. 1335. In addition, the Court held the law did not invade protected freedoms because "obstruct[ing] or unreasonably interfer[ing] with ingress or egress to or from the courthouse" "bears no necessary relationship to the freedom to ... distribute information or opinion." Id. at 617, 88 S.Ct. 1335 (internal quotations omitted).
In 1987, the Supreme Court of the United States considered another case challenging the constitutionality of a similarly worded ordinance in Houston, Texas. City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). The challenged Houston ordinance stated that "[i]t shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest." Id. at 455, 107 S.Ct. 2502.
Contrary to its previous holding in Cameron, the Supreme Court declared the Houston ordinance to be unconstitutionally overbroad under the First Amendment. The Hill Court reasoned that, "the enforceable portion of the ordinance deal[t] not with core criminal conduct, but with speech." Id. at 460, 107 S.Ct. 2502. As the Hill court explained, because there is another statute which makes it unlawful in Texas "for any person to 'assault' or 'strike' a police officer," then "any species of physical assault on a police officer is encompassed within the provisions of the Texas Penal Code," making physical conduct under the challenged ordinance preempted. Id."Accordingly, the enforceable portion of the ordinance makes it 'unlawful for any person to ... in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty,' and thereby prohibits verbal interruptions of police officers." Id. at 461, 107 S.Ct. 2502.
In addition, the Hill court found that the phrase "in any manner ... interrupt" was overbroad because the language "is not limited to fighting words nor even to obscene or opprobrious language, but prohibits speech." Id. at 462, 107 S.Ct. 2502. The Hill court also found that the challenged ordinance's "plain language is admittedly violated scores of times daily [ ], yet only some individuals-those chosen by the police in their unguided discretion-are arrested. Far from providing the 'breathing space' that 'First Amendment freedoms need ... to survive,' the ordinance is susceptible of regular application to protected expression"; thus, it was overbroad. Id. at 466-67, 107 S.Ct. 2502 (internal citation omitted).
2. Cases Interpreting Cameron and Hill
Since Hill, multiple courts have considered similar ordinances and found them constitutional.[4] In Lawrence v. 48th Dist. Court, the Sixth Circuit Court of Appeals held constitutional an ordinance providing that "[n]o person shall resist any police officer, any member of the police department or any person duly empowered with police authority while in the discharge or apparent discharge of his duty, or in any way interfere with or hinder him with the discharge of his duty."
*400 560 F.3d 475, 477, 482 (6th Cir. 2009). The Lawrence court was guided by the Cameron court's analysis of the common understanding of "interfere" and distinguished Hill, stating that:
While Hill did invalidate a statute prohibiting a person from "... in any manner oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duty, ...," the court focused on the "interrupt" element of the crime, not the "in any manner" portion which shares similarity with the "in any way" part of the statute here. That the law prohibited interruption meant that the law prohibited speech, as interruption suggested verbal interruption. The ordinance here prohibits "resist[ing]," "interfer[ing]" and "hinder[ing]," none of which suggest speech, and on the contrary, suggest some kind of physical interference.
Lawrence, 560 F.3d at 482 ; Cameron, 390 U.S. at 616, 88 S.Ct. 1335. See also State v. Krawsky, 426 N.W.2d 875, 876-78 (Minn. 1988) (finding that the terms "obstructs," "hinders," "prevents," and "interferes," applied only to physical acts substantially frustrating or hindering an officer's performance of his duties); McDermott v. Royal, 613 F.3d 1192, 1194 (8th Cir. 2010) (holding that "obstruct" "cover[s] only physical acts or fighting words"); Fair v. City of Galveston, 915 F.Supp. 873, 879 (S.D. Tex. 1996), aff'd, 100 F.3d 953 (5th Cir. 1996) ("[b]y using the term 'interfere,' [the questioned ordinance] facially pertains to acts which pose an actual hinderance to the accomplishment of a specified task, as opposed to the ordinance considered in Hill, which pertained primarily to verbal acts through the use of the term 'interrupt.' ").
We also recognize that some courts have held as unconstitutional certain municipal ordinances similar to the ordinances at issue in Cameron, Hill, and here. The District Court of South Carolina considered a municipal ordinance in Turbeville, South Carolina that made it "unlawful for any person or persons willfully to approach nearer than twenty (20) feet to any town employee for the purpose of interfering or stopping that employee from carrying out his/her duties." Baker v. Lieutenant Grant Cannon, No. 2:15-cv-01471-DCN, 2016 WL 5402860, at *1 (D.S.C. Sept. 28, 2016).[5] The Baker court determined that the Turbeville ordinance was facially unconstitutional because it was overbroad. Id. at *3. First, the Baker court held that the Turbeville ordinance "falls squarely within the purview of the First Amendment because the term 'interfere' as used in the Turbeville [o]rdinance encompasses protected speech as well as physical conduct." Id. Next, the Baker court determined that the Turbeville ordinance was broader than the ordinance in Hill"because it extends to any town employee as opposed to being restricted to interfering with just police officers." Id. at *7 (emphasis in original). Further, "[s]ince the term 'interfere' in the Turbeville [o]rdinance governs speech as well as physical conduct, is not restricted to obscene language or fighting words, and gives officers 'unfettered discretion' to make arrests for mere words, the court conclude[d] that it is unconstitutionally overbroad on its face." Id. at *8.
Noting that the Sixth Circuit in Lawrence upheld a constitutional challenge to a similar municipal ordinance, the Baker court focused on what it considered to be a critical distinction of the Turbeville ordinance to support its contrary holding. The *401 Baker court emphasized the absence of the term "obstruct" from the Turbeville ordinance as a material difference from the ordinance at issue in Lawrence: "[the Turbeville ordinance] is not like ordinances that 'include series of terms having related meanings and thus provide additional context for the person of ordinary intelligence to understand what conduct is prohibited.' " Id. at *5 (citing McCoy v. City of Columbia, 929 F.Supp.2d 541, 553 (D.S.C. 2013) ). See also Landry v. Daley, 280 F.Supp. 968, 973 (N.D. Ill. 1968) (the term "obstruct" clearly connotes some affirmative physical action, whereas "interfere" is vague and indefinite). The Baker court concluded that this difference was noteworthy because the Turbeville ordinance was not an obstruction ordinance as was the ordinance at issue in Lawrence, and that the term "interfere," standing alone, allowed governmental authority to cast a broad prohibitory net over any speech directed to a town employee." Baker, 2016 WL 5402860, at *4-5. That broad prohibition, the Baker court held, violated the free speech protections of the First Amendment.
C. The Ordinance Does Not Proscribe a Substantial Amount of Conduct Protected by the First Amendment
Turning now to the Ordinance before us, Appellants reason that the language of the Ordinance, when using common definitions of each word, encompasses not only physical action, but reaches also purely verbal conduct. Appellants maintain that because the Ordinance proscribes a substantial amount of conduct protected by the First Amendment, it is unconstitutionally overbroad. We disagree.
We first recognize that the Ordinance does not define the terms "obstruct" or "interfere." "When a term is undefined, the legislat[ive body] is presumed to intend that the term be used in its plain and ordinary meaning according to the dictionary." Tendai v. Mo. State Bd. of Registration for the Healing Arts, 161 S.W.3d 358, 366 (Mo. banc 2005), overruled on other grounds in Albanna v. State Bd. of Registration for the Healing Arts, 293 S.W.3d 423, 428 n.2 (Mo. banc 2009). Webster's Dictionary defines "obstruct" as:
1: to block up: stop up or close up: place an obstacle in or fill with obstacles or impediments to passing; 2: to be or come in the way of; hinder from passing, action, or operation; 3: to cut off from sight: shut out: to place obstacles in the way.
Obstruct, WEBSTER'S DICTIONARY (3d ed. 1965).
Webster's Dictionary defines "interfere" as
to come in collision: to be in opposition ... to enter into or take a part in the concerns of others ... to act reciprocally so as to augment, diminish or otherwise affect one another.
Interfere, WEBSTER'S DICTIONARY (3d ed. 1965).
1. "Obstruct"
Appellants' assertion that the word "obstruct" is unconstitutionally overbroad is unavailing. The term "obstruct," in the specific context of the Ordinance, does not suggest speech. To the contrary, in accordance with other courts' findings, we hold that St. Louis County's use of the term "obstruct" connotes purely physical action. See Krawsky, 426 N.W.2d at 876-78 ; McDermott, 613 F.3d at 1194 ; Landry, 280 F.Supp. at 973 ; Baker, 2016 WL 5402860, at *5. The definition of "obstruct" includes words and phrases such as "block," "place an obstacle in" the way of, and "hinder from passing." Obstruct, WEBSTER'S DICTIONARY (3d ed. 1965). The terms "obstruct," as used in the Ordinance, is consistent with *402 physical conduct. Further, we are not persuaded that a person who obstructs a police officer, under its "common understanding," is engaged in the dissemination of information, a protected form of speech under the First Amendment. See id. See also Cameron, 390 U.S. at 616, 88 S.Ct. 1335. The term, "obstruct," as used in the Ordinance, is not reasonably interpreted or understood to apply to a substantial amount of conduct protected by the First Amendment. St. Louis County's use of the term "obstruct" does not render the Ordinance unconstitutionally overbroad.
2. "Interfere"
Appellants similarly challenge the Ordinance by its use of the term "interfere." Like "obstruct," the term "interfere" has been held to connote purely physical acts. See, e.g., Lawrence, 560 F.3d at 482 ; Krawsky, 426 N.W.2d at 876-78.[6] We agree that the term "interfere," as used in the Ordinance in connection with the term "obstruct," does not reference purely verbal conduct. Indeed, the term "interfere" has been even more narrowly construed to describe physical conduct than was the term "interrupt" in Hill. See Hill, 482 U.S. at 466, 107 S.Ct. 2502 ; Lawrence, 560 F.3d at 482.
In Krawsky, the Minnesota Supreme Court reviewed a state statute making it unlawful to obstruct or interfere with law enforcement officers. In denying the constitutional challenge to the Minnesota statute, the Krawsky court statute:
[O]ur statute is directed at a particular kind of physical act, namely, physically obstructing or interfering with an officer, whereas under the ordinance in [ Hill ] one could be punished for merely "interrupting" an officer in the line of duty. The term "interrupts" connotes the breaking of the continuity of some action or discourse, and would include breaking in with a question or remark while another person is doing something; the term does not necessarily suggest that continuation of the interrupted activity is difficult or impossible.... On the other hand, physically obstructing or interfering with a police officer involves not merely interrupting an officer but substantially frustrating or hindering the officer in the performance of his duties.
Krawsky, 426 N.W.2d at 877. Consistent with the thorough analysis presented in so many judicial opinions, we hold that the Ordinance prohibits physical obstructions or interferences with a county employee in the performance of his or her official duties, and not verbal challenges to police conduct. See also Cameron, 390 U.S. at 616, 88 S.Ct. 1335 ("obstruct" and "unreasonably interfere" are "words of common understanding"). We recognize that the Ordinance may be enforced with the purpose of punishing "fighting words" or other words that, by themselves, have the effect of physically obstructing or interfering with a county employee. See, e.g., Krawsky, 426 N.W.2d at 877. Our judicious review of the many cases addressing the application of First Amendment protection to governmental limits on conduct as imposed by St. Louis County with the enactment *403 of the Ordinance leads us to reject Appellants' arguments. The Ordinance does not extend its prohibition to ordinary verbal criticism directed at a police officer or county employee, nor does it apply to the mere verbal interruption of a law enforcement officer. Contra Hill, 482 U.S. at 461-62, 107 S.Ct. 2502.
We consider it instructive that, although Baker upheld a constitutional challenge to an ordinance language similar to that found in the Ordinance before us, the Baker court emphasized the difference between "obstruction ordinances" like those at issue in Lawrence and here, from ordinances prohibiting only "interference." Baker, 2016 WL 5402860, at *3, *5. Ordinances prohibiting conduct that "obstructs" instead of conduct that "interferes" provide persons of ordinary intelligence with significant and clear guidance to understand what conduct is prohibited. Id. at *5 (quoting McCoy, 929 F.Supp.2d at 553 ). Here, the presence of both the terms "interfere" and "obstruct" in the Ordinance provides the requisite guidance to persons of ordinary intelligence that the Ordinance, as a whole, limits physical conduct, and does not limit or preclude a substantial amount of protected First Amendment speech. See id. Therefore, we hold the Ordinance as a whole is not unconstitutionally overbroad because it does not proscribe a substantial amount of First Amendment protected speech.
3. "In Any Manner" and "In Any Manner Whatsoever"
Appellants additionally contend that the inclusion of the modifiers "in any manner" and "in any manner whatsoever" significantly expand the terms "interfere" and "obstruct," rendering those terms unconstitutionally overbroad. Appellants posit that these modifiers broaden the definitions of "interfere" and "obstruct" far beyond mere physical conduct. Appellants suggest that these modifiers allow the prosecution of acts that merely "hinder" "meddle" and "delay," the performance of a county employee's duty, conduct that encompasses countless types of speech, including a substantial amount of protected speech.[7] We remain unconvinced that persons of ordinary intelligence would infer or somehow understand that adding the phrases "in any manner" and "in any manner whatsoever" suggests that St. Louis County intended to include all possible synonyms of the terms "interfere" and "obstruct" in the Ordinance.
The District Court in Baker suggests that constitutional challenges of the nature as presented here could be avoided when the legislative body provides precise definitions for terms such as "interfere" or "obstruct." See Baker, 2016 WL 5402860, at *3-4. While acknowledging the benefits of such a practice, our duty is to interpret laws as written, and to interpret ordinances "to avoid absurd results."
*404 Coop. Home Care, Inc. v. City of St. Louis, 514 S.W.3d 571, 578 (Mo. banc 2017) (citing McCollum v. Dir. of Revenue, 906 S.W.2d 368, 369 (Mo. banc 1995) ). Interpreting the phrase "in any manner" and "in any manner whatsoever" so broadly as to mean that the words "interfere" and "obstruct" necessarily include every possible synonym and the corresponding definition of each synonym would lead to absurd results by removing any limit on the possible meaning of these words. We decline to interpret the phrases "in any manner" and "in any manner whatsoever" so expansively so as to include the definition of any synonyms of the terms "obstruct" and "interfere" that may be found in Black's Law Dictionary. Instead, we are guided by the plain meaning of the words used and the context in which those words are used in the Ordinance. Appellants' argument fails.[8] Points One and Three are denied.
II. Point Two: Void-for-Vagueness
Appellants also challenge the Ordinance's constitutionality under the void-for-vagueness doctrine as considered under the Due Process Clause of the Fifth Amendment. U.S. CONST. amend. V. Appellants allege that the Ordinance is unconstitutionally vague because it fails to place people on fair notice of what conduct is prohibited, and encourages arbitrary and discriminatory enforcement.
A. The Void-for-Vagueness Standard
An ordinance is considered void for vagueness if, on its face, the ordinance does not provide adequate notice of prohibited conduct to potential offenders. State v. Stokely, 842 S.W.2d 77, 80-81 (Mo. banc 1992) ("One lacks notice if the statute is so unclear that [people] of common intelligence must necessarily guess at its meaning.") (internal quotations omitted). Alternatively, an ordinance may be unconstitutionally vague if it lacks sufficient guidance so as to avoid arbitrary and discriminatory applications. Id. (internal citations omitted). Yet, "[i]mpossible standards of specificity are not required." Duncan v. Mo. Bd. for Architects, Prof'l Eng'rs & Land Surveyors, 744 S.W.2d 524, 532 (Mo. App. E.D. 1988) (citing Ferguson Police Officers Ass'n v. City of Ferguson, 670 S.W.2d 921, 927 (Mo. App. E.D. 1984) ). "Statutes are presumed to be constitutional *405 and will be held otherwise only if they clearly contravene some constitutional provision." State v. Young, 695 S.W.2d 882, 883 (Mo. banc 1985).
B. Vagueness of Similar Laws Analyzed
1. United States Supreme Court Precedent
Appellants and Respondents again rely on the same two United States Supreme Court cases to frame the vagueness issue as it impacts the constitutionality of the Ordinance: Cameron and Hill.
In Cameron, the appellants argued "that the statute forbids picketing in terms 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application....' " Cameron v. Johnson, 390 U.S. 611, 615-16, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). The Supreme Court rejected that argument and held that the statute was not unconstitutionally vague because the terms "obstruct" and "unreasonably interfere" "plainly require no 'guess[ing] at [their] meaning.' " Id. at 616, 88 S.Ct. 1335. The Supreme Court also noted that "Appellants focus on the word 'unreasonable' ... [which] is a widely used and well understood word and clearly so when juxtaposed with 'obstruct' and 'interfere.' We conclude that the statute clearly and precisely delineates its reach in words of common understanding." Id.
In Hill, the Supreme Court recognized that, similar to the overbreadth analysis, the vagueness analysis requires courts to first "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." City of Houston v. Hill, 482 U.S. 451, 458-59, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (internal quotations omitted). Upon finding that the challenged ordinance criminalizes a substantial amount of constitutionally protected speech, the Hill court then held that the challenged ordinance "accords the police unconstitutional discretion in enforcement." 482 U.S. at 466, 107 S.Ct. 2502. Because the ordinance was not narrowly tailored to prohibit only disorderly conduct or fighting words, the Hill court held that the ordinance had a "virtually open-ended interpretation," leading to a "self-evident" "opportunity for abuse" in enforcement. Id. The Hill court affirmed the Court of Appeals judgment, which "agreed with the District Court's conclusion that the ordinance was not vague, and that it 'plainly encompasse[d] mere verbal as well as physical conduct[,]" but concluded that the ordinance was overbroad. Id. at 456, 467, 107 S.Ct. 2502.
2. Other Cases Addressing the Vagueness of Similar Laws
In Krawsky, the Minnesota Supreme Court reviewed a statute which read:
Whoever intentionally obstructs, hinders or prevents the lawful execution of any legal process, ... or interferes with a peace officer while the officer is engaged in the performance of official duties or by force or threat of force endeavors to obstruct any employee of the department of revenue while the employee is lawfully engaged in the performance of official duties for the purpose of deterring or interfering with the performance of those duties, may be sentenced ...
State v. Krawsky, 426 N.W.2d 875, 876 (Minn. 1988). The Krawsky court held that the Minnesota statute was not unconstitutionally vague because "[p]ersons of common intelligence need not guess at whether their conduct violates the statute." Id. at 878. Further, the Krawsky court found the following:
[T]he statute clearly prohibits only intentional physical obstruction or interference with a peace officer in the performance *406 of his duties. Nor does the statute encourage arbitrary or discriminatory enforcement by the police.... Moreover, given the wide variety of circumstances in which the type of conduct [the challenged statute] legitimately seeks to proscribe can occur, it seems unlikely that a substantially more precise standard could be formulated which would not risk nullification in practice because of easy evasion.
Krawsky, 426 N.W.2d at 878-79.
We again recognize that in Baker, the District Court of South Carolina determined that a municipal ordinance making it "unlawful for any person or persons willfully to approach nearer than twenty (20) feet to any town employee for the purpose of interfering or stopping that employee from carrying out his/her duties" was unconstitutional under the void-for-vagueness doctrine. Baker v. Lieutenant Grant Cannon, No. 2:15-cv-01471-DCN, 2016 WL 5402860, at *1 (D.S.C. Sept. 28, 2016). The Baker court determined that the challenged ordinance was unconstitutionally vague because, "there is no definition of 'interfere' or additional context in the statute to guide a person of ordinary intelligence as to what conduct is prohibited," thus, the ordinance did not provide adequate notice. Id. at *5. Nor did the challenged ordinance prevent arbitrary and discriminatory enforcement. Id. at *6 (the "breadth of possible interpretations of the term 'interference,' " leaves too much discretion to the enforcement officer).
C. Adequate Notice
Appellants challenge the Ordinance as failing to provide fair notice of what conduct is prohibited. An ordinance is not void for vagueness if "the terms or words used are of common usage and are understandable by persons of ordinary intelligence." J.P.B. M.R.S. v. Greene Cnty. Juvenile Office, 509 S.W.3d 84, 89 (Mo. 2017) (citing Bd. of Educ. of City of St. Louis v. State, 47 S.W.3d 366, 369 (Mo. banc 2001) ). We are mindful that "[t]he vagueness doctrine does not invalidate every [ordinance] which a reviewing court believes could have been drafted with greater precision, especially in light of the inherent vagueness of many English words." State v. Lyons, 802 S.W.2d 590, 592 (Tenn. 1990). See also Arnett v. Kennedy, 416 U.S. 134, 159, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), overruled on other grounds by Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("There are limitations in the English language with respect to both being specific and manageably brief."). "Neither absolute certainty nor impossible standards of specificity are required." State v. Duggar, 806 S.W.2d 407, 408 (Mo. banc 1991).
Appellants argue that the phrases "interfere in any way" and "obstruct in any way whatsoever" are so imprecise and uncertain as to render the Ordinance void for vagueness. Similar to an overbreadth challenge, "[i]f the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirement as to definiteness and certainty." Prokopf v. Whaley, 592 S.W.2d 819, 824 (Mo. banc 1980).
The words "obstruct" and "interfere" are commonly understood terms that are not so broad as to render the Ordinance unconstitutional. A plain reading of the term "obstruct," as used in the specific context of the Ordinance, in no manner suggests limitations on speech. To the contrary, consistent with the analysis and interpretation of other courts, "obstruct" means physical action against police officers or other county employees. See, e.g., Krawsky, 426 N.W.2d at 876-78 ;
*407 McDermott v. Royal, 613 F.3d 1192, 1194 (8th Cir. 2010) ; Landry v. Daley, 280 F.Supp. 968, 973 (N.D. Ill. 1968) ; Baker, 2016 WL 5402860, at *5. Even noting the Baker court's admonition of the lack of a definition of the challenged term, unlike the Turbeville ordinance, here the additional context in the Ordinance is a plain and clear guide to persons of common intelligence as to what conduct is prohibited. Applying the Webster's Dictionary definition of the word "obstruct," a person of common intelligence is given proper notice that any action which physically blocks an officer from fulfilling their official duty is illegal. And, as previously noted, a person who "obstructs" a police officer, under its "common understanding," is not disseminating information. See Obstruct, WEBSTER'S DICTIONARY (3d ed. 1965); Cameron, 390 U.S. at 616, 88 S.Ct. 1335 ("obstruct" is a term of "common understanding"). Accordingly, the implications of limiting a protected form of speech under the First Amendment is simply not at issue.
Also, as we have concluded earlier in this opinion, the term "interfere" as used in the Ordinance, is also a word of "common understanding" denoting physical action, and does not include conduct that invokes a substantial amount of constitutionally protected speech. See discussion, supra; Cameron, 390 U.S. at 616, 88 S.Ct. 1335. Although "interfere" may be open to a somewhat broader interpretation than "obstruct," the definition and common usage of the term are sufficiently clear to provide adequate and substantial notice to potential offenders as to what conduct is prohibited under the Ordinance. Similar to "obstruct," a person who interferes with a police officer, under its "common understanding" as viewed through Webster's Dictionary definition, does not disseminate information, a protected form of speech under the First Amendment; rather, the offender must engage in some kind of physical conduct. See Interfere, WEBSTER'S DICTIONARY (3d ed. 1965); Cameron, 390 U.S. at 616, 88 S.Ct. 1335 ; Lawrence v. 48th Dist. Court, 560 F.3d 475, 482 (6th Cir. 2009). Moreover, St. Louis County's coupling of the terms "interfere" and "obstruct" offers the additional context lacking in Baker, and clearly informs a person of common intelligence what conduct is prohibited under the Ordinance.
Appellants' arguments fail because the Ordinance, according to its plain language, is unambiguous and clear. The ordinary person of common intelligence has sufficient, adequate, and indeed substantial notice of what conduct is prohibited by the Ordinance: physically interfering with or obstructing a police officer in their official duties. Further, given the wide variety of circumstances and physical conduct which confront law enforcement, we question whether St. Louis County could have drafted more limiting language and still maintain the purpose for which the Ordinance was enacted. See Krawsky, 426 N.W.2d at 878-79. We firmly reject Appellants' argument that the Ordinance is unconstitutionally vague for failing to provide adequate notice.
D. Arbitrary and Discriminatory Enforcement
Appellants argue that the Ordinance is void for vagueness because it gives unfettered discretion to police officers that results in arbitrary and discriminatory enforcement. Specifically, Appellants contend that the plain language of the Ordinance leaves the determination of what conduct violates the ordinance entirely to the officer's discretion because the Ordinance lacks limiting language, lacks a scienter requirement, and criminalizes any conduct that interferes with or obstructs a police officer.
*408 The Ordinance is unconstitutionally vague if it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Further, "[t]he danger of arbitrary and discriminatory enforcement is present ... [where] [t]he language of the provision is not clear, and the [enforcers] may interpret [the Ordinance] as he or she sees fit when a particular situation arises, without the guidance of written regulations." Ferguson Police Officers Assoc. v. City of Ferguson, 670 S.W.2d 921, 927 (Mo. App. E.D. 1984).
Here, there is no danger of arbitrary and discriminatory application because the Ordinance uses commonly understood language that properly informs police officers of when enforcement is proper; thus, it does not lack limiting language. See Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294 ; Duncan, 744 S.W.2d at 532 ("Impossible standards of specificity are not required."). We interpret the Ordinance as applying to physical interferences and obstructions. Therefore, police officers have guidance from the Ordinance that physical conduct is prohibited, and the Ordinance does not contain an impermissible delegation to police officers for resolution based on a subjective basis. See Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294 ; Ferguson Police Officers Assoc., 670 S.W.2d at 927. Our conclusion is consistent with decisions in other jurisdictions where similarly worded ordinances have survived void-for-vagueness attacks. See, e.g., Cameron, 390 U.S. at 615-16, 88 S.Ct. 1335 ; Krawsky, 426 N.W.2d at 878-79.
The Ordinance does not criminalize any conduct that interferes or obstructs with a police officer thus allowing police to subjectively apply the Ordinance to constitutionally protected speech. We recognize that the void-for-vagueness doctrine is designed to protect innocent people from arrest, and to mandate explicit enforcement standards. See Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294. However, given the wide variety of circumstances in which the conduct criminalized under the Ordinance may occur, it seems unlikely that a substantially more precise standard could have been formulated that would not risk nullification in practice. See Krawsky, 426 N.W.2d at 878-79. Further, unlike the challenged law in Hill, the Ordinance does not lead to a "self-evident" "opportunity for abuse" in enforcement because it does not possess a "virtually open-ended interpretation." Contra Hill, 482 U.S. at 466, 107 S.Ct. 2502. Instead, the Ordinance provides clear language that guides enforcement officers to arrest people for prohibiting the Ordinance only when they are explicitly interfering or obstructing a city employee while conducting official duties. We hold that the Ordinance is not unconstitutionally vague for giving unfettered discretion to police officers that necessarily results in arbitrary and discriminatory enforcement. Point Two is denied in its entirety.[9]
*409 Conclusion
The judgment of the trial court is affirmed.
Robert G. Dowd, Jr., P.J., concurs.
Sherri B. Sullivan, J., concurs.

St. Louis County, Mo., Rev. Ord. tit. VII, ch. 701, § 701.110.

U.S. Const. amend. I.

Mo. Const. Art. I, § 8.

Outside of Cameron and Hill, there is scant precedent in our jurisdiction to guide our analysis of the Ordinance's constitutionality. We recognize as instructive, but not binding, the plethora of cases both the Appellants and Respondents cited in their briefs and limit our analysis to those cases challenging the ordinances most similar in language to the Ordinance at issue here.

We recognize that Baker is nonbinding precedent from a federal district court. However, the language in the Turbeville ordinance parallels the Ordinance, and thus exemplifies how some courts have interpreted Hill and Cameron.

We recognize that some courts have held that the term "interfere" contributes to the overbreadth of ordinances or statutes. See, e.g., Dorman v. Satti, 862 F.2d 432, 435-37 (2d Cir. 1988) ; Baker, 2016 WL 5402860, at *3-4 ; Landry, 280 F.Supp. at 973 ( "interfere" is vague and indefinite, and could encompass both inaction and speech); State v. Etherage, 277 S.C. 523, 290 S.E.2d 413, 413-14 (1982) (noting that although no physical contact was made, appellant "interfered" with the officer arresting appellant's brother by cursing the officer, calling him names, and threatening to beat him). We decline to adopt the analyses of these cases.

Appellants posit arguments premised upon the definitions of "interfere" and "obstruct" found in Black's Law Dictionary, which includes synonyms to both terms. Black's Law Dictionary defines "interfere" as (1) "[t]he act of meddling in another's affairs," or (2) "[a]n obstruction or hinderance." Interference, Black's Law Dictionary (10th ed. 2014). Black's Law Dictionary defines "obstruct" as (1) "[t]o block or stop up (a road, passageway, etc.); to close up or close off, esp. by obstacle"; (2) "[t]o make difficult or impossible; to keep from happening; hinder"; or (3) "[t]o cut off a line of vision; to shut out." Obstruct, Black's Law Dictionary (10th ed. 2014). However, we are instructed to apply the "plain and ordinary meaning according to the dictionary," and as interpreted by ordinary persons. Accordingly, we are more appropriately guided by the definitions of these words found within the Webster Dictionary. See, e.g., Tendai, 161 S.W.3d at 366-67.

We note that Appellants also argue that the Ordinance lacks a scienter requirement, thus making the Ordinance a strict-liability ordinance, which chills speech and is per se unconstitutional. However, the lack of a scienter requirement does not render a statute per se unconstitutional. See Staley v. Jones, 239 F.3d 769, 791 (6th Cir. 2001) ("a scienter requirement may mitigate a law's vagueness," but is not indicative of a statute's constitutionality); Lawrence, 560 F.3d at 482. Although the Ordinance lacks an express scienter requirement, that failure does not render the Ordinance a strict liability ordinance, which is per se unconstitutional. See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). We have already determined that the Ordinance's language does not proscribe a substantial amount of protected speech. In addition, Appellants failed to cite any sources beyond Video Software Dealers Ass'n, which Appellants used to state that "any statute that chills the exercise of First Amendment rights must contain a knowledge element." See Video Software Dealers Ass'n v. Webster, 968 F.2d 684, 690-91 (8th Cir. 1992) (holding that a statute prohibiting the sale or rental of a "violent" video unconstitutionally chilled speech because it penalized "video dealers regardless of their knowledge of a video's contents" and "limit[ed] videos available to the public to videos the dealers have viewed."). Unlike Video Software Dealers Ass'n, the Ordinance does not impede speech towards county employees such that it "ultimately restrict[s] the public's access to constitutionally protected" speech. Id. Because the general language of the Ordinance is not overbroad, and because Appellants failed to cite persuasive authority to indicate that the lack of a scienter requirement necessarily chills speech and makes the Ordinance per se unconstitutional, their argument fails.

As part of their argument, Appellants claim that the Ordinance lacks a scienter requirement and thus allows officers to arrest potential offenders based on the subjective view of the officer versus an objective standpoint. However, as discussed above, a lack of a scienter requirement does not render a statute per se unconstitutional. See Staley v. Jones, 239 F.3d 769, 791 (6th Cir. 2001). Because the Ordinance uses commonly understood terms, and has not been shown to provide unfettered discretion to enforcement agents, arrests based on the subjective view of the enforcement officer are not inherent. Thus, the lack of scienter requirement does not make the Ordinance unconstitutional.